Cullen Reed PEPPERS,
Plaintiff–Appellee,

v.

Bobby F. COATES, Jr.,
Defendant–Appellant,

Buster Williams, et al., Defendants.

No. 88–8557.

United States Court of Appeals,
Eleventh Circuit.

Nov. 13, 1989.

Nina Hickson Perry, Sharon D. Stokes,
Asst. U.S. Attys., Atlanta, Ga., for defendant-appellant.

Frank J. Beltran, Beltran & Buckley, Atlanta, Ga., Simone R. Siex, Atlanta, Ga., for plaintiff-appellee.

Before FAY and HATCHETT, Circuit
Judges, and ALLGOOD *, Senior
District Judge.

FAY, Circuit Judge.

This action arose from a series of events which involved the Secret Service and plaintiff-appellee, Cullen Peppers, and eventually led to the arrest of several defendants allegedly involved in a counterfeiting scheme. Peppers filed a *Bivens*[1] action alleging a plethora of violations of his rights against several Secret Service agents, including defendant-appellant, Bobby Coates. Coates[2] challenges the district court's order denying defendants' motion for summary judgment on the basis of qualified immunity,[3] asserting that Peppers has failed to raise a genuine issue of material fact with respect to Coates' involvement in any allegedly unlawful conduct in violation of Peppers' rights. Peppers argues that this court lacks jurisdiction because the district court's order denying Coates' motion for summary judgment turns on an issue of fact and therefore is not immediately appealable. Further, Peppers argues that he has raised questions of fact sufficient to withstand a motion for summary judgment. For the reasons set forth in this opinion we hold that this court has jurisdiction to review the district court's order denying Coates' motion for summary judgment, and we REVERSE and REMAND with instructions to grant summary judgment in favor of Coates.

## I. BACKGROUND

In 1983, Peppers' brother, Anthony Peppers, became aware of a counterfeiting scheme and offered to assist the Secret Service in undercover operations to expose the scheme. When Anthony Peppers was unable to obtain samples of the counterfeit currency, he solicited assistance from his brother, plaintiff, Cullen Peppers. Plaintiff alleges that George Sexton, a Secret Service agent, knew of his involvement in the undercover operations, and actually authorized him to obtain samples of the counterfeit currency. Defendants deny this allegation. In any event, on April 23, 1983,

---

\* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court granted injured plaintiffs the right to bring claims for money damages against federal officials for violations of constitutional rights.

2. Originally, the notice of appeal was filed on behalf of five defendants: Bobby Coates, Harold Ewing, Robert Cozart, George Sexton, and Guy Hinton (R2–66). However, this appeal proceeded only on behalf of Bobby Coates. (Appellants' Brief at 4).

3. *Peppers v. Coates,* 694 F.Supp. 1562 (N.D.Ga. 1988).

Peppers obtained the samples and relinquished them to the Secret Service.

At a meeting on April 25, 1983, defendant Hal Ewing and another agent inquired as to how Peppers obtained the counterfeit currency. Peppers alleges that these agents threatened, coerced, and intimidated him at this meeting so that he would monitor the counterfeiters' activity. The agents assert that all they told Peppers at the April 25th meeting was that he violated the law, and that they would turn the information they had over to the United States Attorney's office.

On April 27, 1983, defendant Guy Hinton and another Secret Service agent met with Peppers. Peppers alleges that at this meeting Hinton failed to advise Peppers of his *Miranda* rights and threatened to arrest him if he refused to sign a statement. Furthermore, Peppers alleges that Hinton denied Peppers' request to confer with counsel and intimidated, coerced, and threatened Peppers so that he would assist the Secret Service in a "buy bust" with the counterfeiters. Defendants deny any threats, coercion, or intimidation.

On April 28, 1983, defendant Bob Francis installed electronic surveillance equipment in Peppers' van in preparation for the "buy bust." Furthermore, it is uncontroverted that on April 28, 1983, defendant Bobby Coates authorized the agents to use the office television set to purchase the counterfeit currency in the "buy bust." The only other involvement of Coates in these events was that the agents conducting the investigation briefed him on the developments in the case. Later that day, the "buy bust" occurred and Secret Service agents simulated the arrest of Peppers in order to protect his cover. Peppers alleges that the agents used excessive force in simulating his arrest.

On May 13, 1983, Assistant United States Attorney Mary Jane Stewart and Agent Ewing appeared before a federal grand jury to present evidence against Peppers and others involved in the counterfeiting scheme. Peppers was indicted for violations of law as a result of his April 23, 1983 actions in obtaining counterfeit currency samples. Charges against Peppers were dismissed voluntarily at his criminal trial.

On July 3, 1985, Peppers filed his complaint alleging that the actions of the agents, including Bobby Coates, during the interviews and simulated arrest violated his constitutional rights. Defendant Coates and other defendants filed a motion to dismiss and, in the alternative, for summary judgment, which was denied by the district court. Following discovery, defendants filed two motions for reconsideration of their motion for summary judgment. The district court requested clarification of the first motion for reconsideration and denied, on the merits, defendants' renewed motion for reconsideration. Coates now appeals to this court the district court's denial of his renewed motion for reconsideration of his motion for summary judgment.

## II. JURISDICTION

Initially, we must determine whether this court has jurisdiction to hear Coates' appeal from the trial court's order denying him summary judgment on the basis of qualified immunity. Except in certain instances, this court is without jurisdiction to hear appeals from interlocutory orders of the district courts.[4] The purpose of restricting interlocutory appeals is to prevent "the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974). However, the Supreme Court has created an exception to the finality requirement. The Court realized the existence of a small class of decisions which "finally determine

---

**4.** 28 U.S.C. § 1291 (1982) provides in pertinent part:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the

United States ... except where a direct review may be had in the Supreme Court.

28 U.S.C. § 1292 (1982 & Supp.1987) provides for interlocutory appeals under limited circumstances, none of which are applicable to the instant case.

claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The Court has since clarified the so-called "collateral order doctrine," setting forth three criteria for review of interlocutory orders. "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978).

Having established the requirements for invoking the collateral order doctrine, the Supreme Court has approved of its use specifically in cases where a trial court has denied a defendant's motion to dismiss or for summary judgment on the basis of qualified immunity. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In *Mitchell,* the Court painstakingly applied the criteria promulgated in *Cohen* to such a case. The Court reasoned that because the essence of qualified immunity is to relieve a public official of having to answer for his conduct in a civil damages action, later review of an order denying summary judgment on the basis of qualified immunity would prove futile. *Mitchell,* 472 U.S. at 526–27, 105 S.Ct. at 2815–16.[5] Furthermore, the Court held that the "court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to *stand trial* on the plaintiff's allegations...." *Id.* at 527, 105 S.Ct. at 2816 (emphasis in original).[6] Lastly, the Court stated, "a question of immunity is separate from the merits of the underlying action for purposes of the *Cohen* test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue." *Id.* at 528–29, 105 S.Ct. at 2816–17. Thus, *Mitchell* has approved the application of the collateral order doctrine to appeals from a district court's denial of a claim of qualified immunity, to the extent that it turns on a question of law. *Id.* at 530, 105 S.Ct. at 2817.

 In adhering to the standards explicated in *Mitchell,* we hold that in order to invoke the appellate jurisdiction of this court immediately after denial of defendant's motion for summary judgment on the basis of qualified immunity, defendant must establish that plaintiff has failed to raise a genuine issue of fact material to the qualified immunity defense.[7] In *Mitchell,*

---

5. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court rejected a subjective "good faith" standard in determining whether a public official would be entitled to qualified immunity. Rather, because the subjective standard prevented the dismissal of spurious litigation before trial due to inherent questions of fact as to defendant's intent, the Court adopted an objective standard. As the Court recognized in *Mitchell,* this change evinces the Supreme Court's reluctance to force public officials through the rigors of trial when a legitimate immunity defense exists. Hence, allowing appeal of a denial of summary judgment on the basis of immunity only after trial would subvert the policies espoused in *Harlow. Mitchell,* 472 U.S. at 526–27, 105 S.Ct. at 2815–16.

6. The Court analogized a public official's claim of right not to stand trial to a criminal defendant's "double jeopardy" right not to stand trial. *See Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

7. We recognize that other circuits accept jurisdiction over an appeal from a denial of a claim of qualified immunity before determining whether a plaintiff has raised a sufficient question of fact to withstand such a claim. *Krohn v. United States,* 742 F.2d 24 (1st Cir.1984); *McSurely v. McClellan,* 697 F.2d 309 (D.C.Cir. 1982); *see also Emery v. Holmes,* 824 F.2d 143 (1st Cir.1987) (affirming district court's order rather than dismissing appeal because plaintiff raised genuine factual issue regarding immunity claim). We believe, however, that this court may not assume jurisdiction over the appeal, unless plaintiff has failed to raise a question of fact material to defendant's claim of qualified immunity. *Goddard v. Urrea,* 847 F.2d 765 (11th Cir.1988); *Riley v. Wainwright,* 810 F.2d 1006 (11th Cir.1986), *reh. denied* (1987); *see also Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817 ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision'...."); *Evans v. Dillahunty,* 711 F.2d 828 (8th Cir.1983)

the Court stated that in resolving a claim for qualified immunity, the district court may grant a motion to dismiss "[u]nless the plaintiff's allegations state a claim of violation of clearly established law," and even if plaintiff survives a motion to dismiss, "defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Id.* at 526, 105 S.Ct. at 2815. In the context of the *Mitchell* opinion these standards go only to one element of the *Cohen* collateral order doctrine, namely that the order be effectively unreviewable after final adjudication of the case. *Id.* We believe that a decision denying summary judgment on the basis of qualified immunity is effectively unreviewable only if defendant has a "right" not to stand trial. *See Id.* at 525, 527, 105 S.Ct. at 2815, 2816. And defendant may legitimately claim this "right" only if plaintiff fails to raise sufficient questions of fact regarding defendant's qualified immunity defense. *See Goddard v. Urrea,* 847 F.2d 765 (11th Cir.1988); *Riley v. Wainwright,* 810 F.2d 1006 (11th Cir.1986), *reh. denied* (1987). Consequently, it is our position that if plaintiff has raised a genuine issue as to whether defendant committed acts in violation of plaintiff's rights, an order denying defendant's motion for summary judgment is reviewable after final adjudication of the case, and the collateral order doctrine cannot be invoked prematurely to confer immediate jurisdiction upon this court. Defendant must, in such circumstances, go to trial and may appeal to this court only after final judgment.

This case, however, is not one in which defendant must await a final judgment to appeal. Here, the facts regarding Coates' involvement in any allegedly unlawful conduct are undisputed. He merely authorized an office television set for use in the "buy bust" and was briefed intermittently on the status of the counterfeiting investigation. Since these facts are undisputed and discovery has concluded,[8] our determination as to the validity of Coates' qualified immunity claim turns solely on a question of law. Accordingly, we may assume jurisdiction of this appeal.

### III. SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY

Having assumed jurisdiction over this appeal, we next address whether Peppers has raised a question of fact sufficient to defeat Coates' motion for summary judgment based on his qualified immunity claim. Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). The party moving for summary judgment is entitled to judgment as a matter of law if the nonmoving party fails to show sufficiently an essential element of the case to which the nonmoving party has the burden of proof. *Everett,* 833 F.2d at 1510.

(appellate jurisdiction if essential facts undisputed and immunity question solely a matter of law).

This choice seems to be merely the result of a struggle with difficult concepts, and apparently has no bearing on the ultimate outcome of the appeal. On the one hand, the appellate court assumes jurisdiction if defendant has legitimately claimed qualified immunity, and affirms the trial court's order denying such claim if plaintiff raises a genuine issue as to defendant's commission of acts in violation of plaintiff's clearly established rights. On the other hand, the appellate court dismisses the appeal if plaintiff has uncovered facts creating a genuine issue regarding defendant's commission of acts in violation

of plaintiff's clearly established rights. Thus, while courts differ in their approach to the jurisdictional problems arising from qualified immunity claims, a plaintiff may defeat a defendant's motion for summary judgment on the basis of qualified immunity if plaintiff can raise a genuine issue of fact material to defendant's claim for qualified immunity.

8. Peppers does not contend that the trial court failed to allow him complete discovery. We will assume, therefore, that he is unable to accumulate further evidence regarding Coates' involvement in the allegedly unlawful harassment and simulated arrest.

Of course, we must view the evidence produced by Peppers, and all factual inferences arising from it, in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Everett*, 833 F.2d at 1510; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir.1987). However, when a motion for summary judgment is made and supported according to Rule 56, the nonmoving party's response must set forth specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e). If the party's response consists of nothing more than a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982).

Applying the summary judgment standard to the facts of this case, we are unable to conclude that Peppers has raised a genuine issue of material fact. In order to withstand Coates' motion for summary judgment on the basis of qualified immunity, Peppers must produce sufficient evidence to at least raise the issue of whether a reasonable person in the position of Coates would have known that his actions violated Peppers' clearly established constitutional or statutory rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent. . . ."). Coates, as a government official, is entitled to immunity as long as his actions "could rea-sonably have been thought consistent with the rights [h]e was alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir.1989).

The facts regarding Coates' involvement in the allegedly unlawful events are undisputed and show only that Coates, as the Special Agent–In–Charge of the Atlanta Field Office of the Secret Service, was briefed on developments in the counterfeiting case and authorized use of an office television set in the "buy bust." While we must view the inferences to be drawn from the underlying facts in the light most favorable to Peppers, we do not believe that a jury could reasonably infer from these facts that Coates should have known that his conduct violated Peppers' constitutionally protected rights.[9]

Nowhere in the record has Peppers adduced evidence establishing that Coates was involved personally in any of the alleged harassment, coercion, or use of excessive force. Peppers' only evidence of Coates' involvement in the "buy bust" was Coates' authorization of use of the television set. This evidence is simply insufficient to support the proposition that a reasonable person in the position of Coates should have known that his conduct was unlawful. According to the facts that Peppers has presented, Coates' connection with the allegedly unlawful acts that occurred during the "buy bust" is far too attenuated to subject him to the rigors of trial.

Furthermore, Peppers has failed to establish that Coates acquiesced, with an opportunity to intervene, in the other allegedly unlawful activities of the agents.[10]

---

**9.** In fact, in the order denying Coates' motion for summary judgment, the district judge stated:

> Although plaintiff may not be able to get past a motion for directed verdict on his allegations that defendant Coates took or failed to take any actions which resulted in a violation of plaintiff's constitutional rights, the Court at this stage cannot say that plaintiff has not raised a genuine issue of material fact as to Coates' liability.

*Peppers v. Coates*, 694 F.Supp. 1562, 1564 (N.D. Ga.1988). We believe the trial judge was correct as to his statement regarding a motion for directed verdict. Necessarily, however, the trial judge was incorrect regarding the motion for summary judgment insofar as the standards for a directed verdict and summary judgment are identical—whether a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**10.** Peppers does not argue that Coates is liable for the allegedly unlawful conduct of his subordinates under a respondeat superior theory. In any event, we believe that such a theory of recovery would fail in this case. *Lojuk v.*

Peppers has discovered, and Coates plainly acknowledges, that Coates was briefed on the developments in the counterfeiting case. The sole fact that Coates was briefed on the progress of the investigation, however, does not, within reason, inferentially lead to the conclusion that a reasonable person in the position of Coates should have known that his conduct violated Peppers' clearly established rights. Coates probably routinely briefs his superiors on developments in the Atlanta Field Office. However, that fact, standing alone, would not raise a triable issue of fact regarding such supervisory personnel being involved in the allegedly unlawful conduct of the defendants in this case. As a matter of law, on the facts of this case, Coates cannot be denied summary judgment pursuant to his claim for qualified immunity.

## IV. CONCLUSION

We believe that the evidence Peppers provided in response to Coates' motion for summary judgment has failed to set forth specific facts showing that there is a genuine issue for trial. There is no genuine dispute about a material fact concerning Coates' involvement in the counterfeiting case, and according to the facts of record, no jury rationally could find that a reasonable person in the position of Coates should have known that his conduct violated Peppers' constitutional or statutory rights. To subject Coates to trial on this set of facts would unduly interfere with his official responsibilities and unjustifiably discourage him from vigorously exercising his official authority. *See Harlow,* 457 U.S. at 807, 102 S.Ct. at 2732.

Accordingly, we hold that we have jurisdiction of this appeal, and we REVERSE the district court's order denying defendant's motion for summary judgment and REMAND with instructions to enter summary judgment in favor of defendant Bobby Coates.

*Quandt,* 706 F.2d 1456, 1468 (7th Cir.1983, *cert. denied, Lojuk v. Johnson,* 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986); *see also Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688–89, 69 S.Ct. 1457, 1460–61, 93 L.Ed. 1628 (1949); *Saine v. Hospital Authority of Hall County,* 502 F.2d 1033, 1036–37 (5th Cir.1974) (If the official's conduct can be attributed to the sovereign, then sovereign immunity will bar suit.).